Yeah, Mr. Hillis is going to be by telephone. Is that right? Is that right, Matt and Derek? Okay. So the number of case numbers 21-17-55 and 21-17-56. Mr. Hillis, good morning. If you can hear me from the courtroom, I think we're prepared for you to go ahead. Excellent, Judge. Yes, I can hear you. Good morning. May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Mr. Kanan. He raises two issues on appeal. The first is that the district court erred by predetermining Mr. Kanan having to receive at least a 37-month sentence since another judge in a different case once gave Mr. Kanan 37 months imprisonment for a fraud case. So there are three components that help inform why there's an error here. And the first is that Gall says the guidelines are the starting point for sentencing. There's a Seventh Circuit case law that says it's important for a judge, unless there's a mandatory minimum sentence, to commit himself to a minimum punishment. And also, the federal rules of criminal procedure provide that a defendant has a right to allocution. So here, where the district court said, whatever the guideline range is, it wasn't driving the sentence, and that's at Appendix Page 9. The district court then followed by saying that it was starting with 37 months because that's what Mr. Kanan received in an earlier case, and that's at Appendix Page 44. That all happened before allocution, which occurred over Appendix Pages 44 to 63. So, by making a seemingly conclusive determination that Mr. Kanan had to get at least 37 months imprisonment, the district court erred by predetermining the sentence, not taking into consideration the allocution, and thus infringing on my client's right to allocution. So, for all the things the government says that are peculiar about this case, those are the hard facts, and the government can't get around those based on what the Seventh Circuit case law is. There should be a vacating and reimposition of sentence at a resentencing hearing. Insofar as the government would liken this case to the Dill decision by the Seventh Circuit, we pointed out in a reply brief, and I'll emphasize here for the purposes of today's oral argument, that there is a significant difference. And in Dill, the judge said that he would probably give the same sentence and then listen to what the arguments in the allocution were, and that is not the case here, at least by way of the allocution, which occurred after the judge made a predetermining statement. So, does the panel have any questions on any of that? If it does, I'm happy to entertain what those might be. Mr. Hillis, it's Judge Scudder from the courtroom. Can I offer you a reaction and get the benefit, as I always do, from your response? Of course. So it's this. The transcript shows, does it not, that there was quite an effort to work through the guidelines calculation here. And the guidelines calculation brought with it some complexity because of the two indictments, the application of the grouping rules, etc., etc., that way. But there's no mistake in the transcript, in my view, that the district court judge took quite a lot of time in trying to land on that. And so what I'm wondering is, why not read the reference to the 37 months? I know how you argue, but why not read it as the district court just trying to be transparent with all of the parties in the courtroom around what was on his mind, notwithstanding the complexities around the guidelines computation? Why is that an incorrect reading? Because it's contrary to the text, Judge Scudder, in our view. And I appreciate that what you just explained is basically the government's position. However, guideline complexities be they as they may. The guideline range is 15 to 21 months. And a judge who comes in and uses the previous sentence that another judge gave as a floor isn't doing much by way of respecting what Gall says, what Tatum says. If you're not listening to the right of allocution, then there's a Rule 32-I-4-8 Small Room 2 problem. So it's not about transparency when a judge commits himself. If the judge says, look, under these circumstances, I'm inclined to give a sentence that is this sentence or probably going to give a sentence of this type, that would be one thing. But that's not what happened here. And so we can't reinvent what the transcript says to suit the disposition. We look at what the words are, and we give them effect. And if we were to do a reassessment of this and say this is basically an effort at transparency, then the judge should not do it that way. He should be transparent and explain what is on his mind, what troubles him, but not commit an advanced sentence. And he clearly did here, Judge Scudder, because despite there being a 15 to 20-month guideline range, which is shown on pages 34 and 35, the judge gave a 42-month sentence here in this case. So he locked in for this 37 months. It's not just about transparency. This was about predetermination, and it ultimately gained effect through the 42-month sentence. That's my reaction, Judge. Okay. Thank you. Sure. We'll move on then to the second issue in the case, and that is that since Mr. Cannon wasn't on supervised release when he committed the instant offense, the district court erred by repeatedly saying Mr. Cannon was on supervision and using that as a basis for imposing the sentence. Every defendant has a due process right to be sentenced on the basis of accurate information, and a district court procedurally errs when it relies on inaccurate information to impose sentence. Mr. Cannon wasn't on supervised release when he committed the crimes here. He had successfully discharged supervision from the prior criminal case. So the district court was wrong when it said that he was on supervision, and that's at Appendix Pages 36 through 37. Under this court's case law, Bennington and Chapman, by specifically relying on incorrect information to impose sentence, a district court errs. And so it's the case here the district court errs. Plus, at Appendix Pages 36 and 37, that wasn't the only instance where the judge errantly said that my client was on supervised release. It's also something the judge repeated at Page 1 in the appendix. So the judge was either confused or something along those lines, making a misassessment of what the legal status of my client was during this period of time. And, of course, it appears worse to a judge to think that somebody is on supervised release and committing an offense that is, you know, an outrage to the court by not adhering to an implicit promise not to commit additional offenses. And in this case, the judge was just he was wrong. He specifically gave attention to incorrect information. So that's an error. And I'll point out that the statement of reasons that was later issued in the case doesn't remediate the error because it doesn't even address what this error is. It doesn't recognize what it was. And I know the government attaches attention to this statement of reasons. But the statement of reasons is ineffective for that reason that I just explained. And so I have nothing else to reserve the balance of my time left for Corey's questions. Okay, very well, Mr. Hillis. We'll turn over to Mr. Corey. Good morning. May it please the court. My name is Zach Corey. I'm an assistant United States attorney in the Western District of Wisconsin, and I represent the United States in this appeal. This court should affirm Kannon's 42-month sentence because the district court did not commit any procedural errors in rendering the sentence. I will address appellant's two arguments in turn. First, the district court did not impermissibly commit to a sentence by stating that, quote, I start at 37 months in response to defense counsel's recommendation for a 15-month sentence. Before and after those words, the transcript of the hearing shows that the district court judge maintained an open mind, wrestled with the issues, and considered arguments in mitigation. For example, even after those words, the court responded to points in Kannon's elocution, including his difficult upbringing and how the COVID-19 precautions in jail made his pre-sentence jail time more severe. A statement that I start at 37 months shouldn't be taken strictly and literally. With those five words, the district court judge did not cancel out the whole hearing in which the judge was engaged and had an open mind. And contrary to the reply brief and appellant's argument here, Dill supports affirming Kannon's sentence. In Dill, the district court not only stated that he would probably give a sentence between one and two years, but even more problematically, he stated that his, quote, options, end quote, for Dill's punishment were a term of, quote, not less than a year and no more than two years, end quote. So despite that second statement in which the court seemingly committed himself to a range of 12 to 24 months, this court, the Seventh Circuit, considered the context of the whole hearing and affirmed the sentence because, quote, we do not think, however, the judge's preparation and thought crossed the line into an irrevocable commitment such that his mind was closed to what happened in the hearing, end quote. So to hear that the judge made a comment that, taken in isolation, arguably showed a pre-commitment to a sentencing range, but the context of the whole hearing shows that he was not irrevocably committed to that range and he kept an open mind. So turning to the second argument, the court did not commit an error when he misspoke and stated that Kannon committed the 2020 offense when Kannon was on supervised release instead of pretrial release, and Kannon was on pretrial release when he committed the 2020 case. So taken as a whole, the transcript makes clear that the court did not have a genuine belief that Kannon was on supervised release when he committed the 2020 offense. In the reply brief, the appellant concedes that the district court misspoke in the first two instances but persists in the argument that the court did not misspeak in the latter two. We know he misspoke and he was not laboring under a mistaken belief for at least three reasons. First, he later correctly stated that Kannon was on pretrial release three times. If the appellant now concedes the district court misspoke earlier, it seems likely he misspoke again later in the hearing. And third, if you substitute pretrial release for supervised release, the judge's statements were true and accurate and made sense. And whether the district court misspoke or even had a mistaken belief about Kannon committing the 2020 offense on supervised release, the sentence should be affirmed because the correct information was relied upon in the statement of reasons. On this point, the reply brief reads a requirement into Pennington and Chavez that are not in the cases. The statement of reason doesn't have to acknowledge the mistake and correct it. It just has to correct it and make clear that the court did not rely on inaccurate information. For example, a district court who inaccurately states it is an aggravating factor for the defendant was dealing drugs for two years just has to state in the statement of reasons that the defendant was dealing drugs for one year. Just omitting that discussion entirely, however, would not be enough. A district court judge who inaccurately states that the defendant was arrested 35 times just has to state in the statement of reasons that the defendant was arrested 31 times. Again, just omitting any reference to arrests would not be enough. However, they don't have to explicitly acknowledge the mistake, stating, for example, I stated orally at sentencing the defendant was arrested 35 times. However, I know he was arrested 31 times. Just providing the correct information assures the reader and the court of appeals that the district court judge relied on the correct information at sentencing or that even if they had a mistaken belief at sentencing, they didn't rely on that information, that inaccurate information in rendering the final sentence. And then finally, even if the court did have a genuinely inaccurate belief that Kanaan was not sentenced on the basis, so even if he had a genuinely inaccurate belief, Kanaan was not sentenced on the basis of materially inaccurate information because what the court viewed as aggravating was the fact that Kanaan committed the 2020 offense while on supervision by a probation agent who is the arm of the court. Whether that was pretrial release or supervised release, the fact remains true and is aggravating for the sentence. So for these reasons and the reasons in our brief, the court should affirm the sentence below. Okay, hearing no questions, Mr. Corey, thank you very much. We'll turn back to Mr. Hillis. And Mr. Hillis, I don't know if you probably can't see the clock if you're on the phone, but you got two minutes and 45 seconds or about three minutes. Okay, thank you, Judge. I can't see the clock, so I do appreciate that. So to give faith to what the judge says is an important part of what any transcript requires. When you read it, you shouldn't start reinventing what the transcript says, disregarding one thing and inserting something else that would make the transcript correct just by an addition to fix something. We look at what the judge said and did, and we also look at the case law for what it says and does. So in Dill, the fact that the judge said he would probably give the same sentence signifies an open-mindedness that wasn't signified here. And we look again at what the words in the transcript are. And the judge said what we have to accept here is that he is starting with the 37-month sentence. That does not show that he is open to other things. He may have listened to other things. That's fine. He was required to do so. But he earlier committed himself to a 37-month sentence, and that should not be disregarded here. We shouldn't also look past what the judge said by way of supervised release. There's a difference between mishandling your time on pretrial release and when you're on supervision. When you're not doing things correctly on pretrial release, they bring you in, you violate your bond, you're not entitled to conditional liberty. That's very different than when you are on supervised release and you have offended the court now by committing a new offense that is very serious and much different. And so it is a material difference between the two things, pretrial and supervised release. We cannot include one in the place of the other, much less we couldn't substitute the word assault for murder and have them be the same thing. We look to what the words are and we look to what the judge said. And here the judge consistently misspoke on this, if we can say that it's a misstatement. But it's more correct to read the transcript to say he relied on errant information because he said that Mr. Kanan was on supervision when he wasn't. As for the government's effort to say that statement of reasons don't require anything more than they include the correct information, that is a terrible prospect because that does not require that the judges even acknowledge what was done wrong. How can we have confidence in the statement of reasons being a correct remediation of what the errant sentence was or what the error was during the pronouncement of the sentence? The judge doesn't acknowledge it. Why wouldn't we require the judge to acknowledge what the error was so we could be sure that he knew such that the statement of reasons can be considered a correction of a misstatement if that's all that it was? Here, that didn't occur. The judge labored under misbelief, specifically relied on it. And thus, for the reasons I've stated, we ask the court to vacate the sentence in remand for resentencing, which is not a difficult or troublesome thing to do. And it would be the correct thing in this case. OK, thank you, Mr. Hillis. Thanks to you, Mr. Corey. Thanks to you, we'll take the case under advisement.